IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **PETER CHAVEZ,** § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | **CIVIL ACTION NO. 4:24-CV-01009** | |
| § | | |
| **LEGENDS HOSPITALITY AT AT&T** § | | |
| **STADIUM AKA LEGENDS** § | | |
| **HOSPITALITY, LLC,** § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Peter Chavez ("Plaintiff"), complaining of Defendant, Legends Hospitality at AT&T Stadium ("Defendant"), for causes of action shows unto the Court the following:

### PARTIES AND SERVICE

1. Plaintiff Peter Chavez is a resident of the State of Texas and resides in Arlington, Texas, Tarrant County.

2. The Legends Hospitality at AT&T Stadium AKA Legends Hospitality, LLC may be served with process to Corporate Services Corporation DBA CSC – Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, TX 78701 or wherever he may be found. ***Issuance of a summons is requested at this time***.

### JURISDICTION

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446. This Court has

supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

4. This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violations of the Title VII of the Civil Rights Act of 1964 (Title VII) under 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Texas Labor Code, Chapter 21 suffered by Plaintiff in the course of his employment with Defendant.

## CONDITIONS PRECEDENT

5. All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Equal Employment Opportunity Commission and/or the Texas Workforce Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's and Texas Workforce Commission issuance of a right to sue letter.

## FACTS

6. At all relevant times, Plaintiff was employed by Defendant.

7. Plaintiff was qualified and had prior experience, knowledge, and experience that the position required.

8. At all times, Plaintiff was of Hispanic/Latino race, and it was known by all the employees and all management personnel that he was in fact Hispanic/Latino.

9. Plaintiff worked for Legends Hospitality at AT&T Stadium since May 2012 as the kitchen supervisor.

10. Legends is a provider of food and catering services for sporting events across the country including at AT&T Stadium. They maintain locations across the country including at AT&T Stadium where Plaintiff was employed.

11. During the initial course of his employment, Plaintiff enjoyed working for Defendant and was a long-term model employee.

12. But that eventually changed when Defendant placed Christian Marentes ("Marentes") as Plaintiff's immediate supervisor.

13. From day one Marentes began his racist and hostile treatment of Plaintiff.

14. On numerous occasions Marentes referred to Plaintiff as a "short shrimp wetback" and other racist derogatory names.

15. When Plaintiff confronted Marentes and management, nothing was done.

16. This lack of accountability pushed Marentes to become more hostile and discriminatory.

17. Marentes began to harass the temporary workers at Defendant's location based on their race. As a supervisor helping with temporary staff, Plaintiff let Marentes and managers above Marentes know about the complaints of racial discrimination effecting both Plaintiff and the temporary workers.

18. On several occasions, temporary workers voiced their concerns to Plaintiff, who in turn voiced those concerns to management repeatedly but nothing was done.

19. Marentes continued with even more hostility, to shout racist remarks about Plaintiff's Hispanic/Latino origins telling him to return to the "Gulf of Mexico" and making it known that Hispanic/Latino people were not going to be treated the same.

20. Ultimately Marentes, in retaliation for everything that Plaintiff had reported, mounted an offensive creating false allegations and rumors.

21. Instead of investigating and handling illegal discriminatory acts by one of its managers, the Defendant chose to ignore this and simply terminate Plaintiff because he had complained about the discriminatory practices.

22. At one-point Marentes became so hostile towards Plaintiff that Marentes confronted Plaintiff and pushed him, alleging that he was simply trying to keep his balance. On numerous other occasions, Marentes would physically assault and touch Plaintiff even though Plaintiff had made it clear to Marentes that he did not want to be touched.

23. Eventually when Plaintiff continued to tell Marentes not to touch him, Marentes began to threaten him with physical violence.

24. Plaintiff reported this to management but again, nothing was done.

25. After nearly ten years of working as a model employee, Defendant unjustly and illegally terminated Plaintiff based on his race, complaints of racial discrimination, complaints of a hostile work environment, and complaints of retaliation for making the reports.

## RACE/COLOR DISCRIMINATION

26. Plaintiff pleads, restates, and realleges the previous paragraphs above, as if set forth fully herein, and would further show the Court as follows:

27. Race and color discrimination is found when "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for

employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." *See* Tex. Lab. Code § 21.051.

28. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

29. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

30. Race/color is a protected class, and as a Hispanic/Latino male who was treated discriminatory based on his race/color Plaintiff falls under this protected class.

31. Plaintiff was hired by the Defendant because he was clearly qualified for his position. Plaintiff had prior training and experience in this role. Plaintiff had risen to the role of kitchen supervisor and had worked there nearly ten years without any serious incident or

reprimand. There were no prior disciplinary actions or poor performance reports regarding the Plaintiff.

32. Plaintiff had expressed to management that race/color discrimination was occurring. Plaintiff notified management that it was occurring to him and to other employees openly by another manager. Ultimately, instead of resolving the discrimination Defendant terminated Plaintiff.

33. During the entire time Defendant employed Plaintiff, non-Hispanic/Latino employees that were similarly situated to Defendant were treated more favorably than Plaintiff. Specifically, any concerns those non-Hispanic/Latino employees had were addressed and remedied. The non-Hispanic/Latino employees were also given a fair due process before termination and had a proper full-length investigation unlike the faux sham investigation given to Plaintiff by Defendant.

**RETALIATION**

34. A plaintiff establishes a claim for retaliation when after engaging in protected activity as it relates to the Texas Labor Code is then subjected to an adverse employment action and a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019) (quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

_____
Peter Chavez v. Legends Hospitality at AT&T Stadium                                          Page 6 of 10
*Plaintiff's Original Complaint and Jury Demand*

35. Plaintiff engaged in a Title VII protected activity when he began to file complaints with supervisors and other management about Marentes' racial discrimination, hostility towards him including physical assaults and threats of violence.

36. Plaintiff suffered adverse employment action when he was wrongfully terminated, subjected to harassment, increased scrutiny and a hostile work environment in retaliation for engaging in protected activities, e.g., complaining about Defendants' illegal and discriminatory practices.

37. Instead of the harassment stopping when Plaintiff complained of Marentes, it only got worse because Defendant did not put a stop to the harassment, hostility, and discrimination escalating to physical assaults and threats of violence.

38. Further, Plaintiff was qualified for his position and there had been zero disciplinary action taken by Defendant against Plaintiff concerning his work performance until Plaintiff complained of discrimination, hostile work environment, and illegal treatment.

39. Plaintiff suffered damages for which Plaintiff herein sues.

## HOSTILE WORK ENVIRONMENT

40. Plaintiff pleads, restates, and realleges the previous paragraphs above, as if set forth fully herein, and would further show the Court as follows:

41. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
>> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

    (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

42. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

43. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

44. Plaintiff was subject to a hostile workplace because of severe and pervasive bullying, ridicule and harassment, including but not limited to consistent comments and remarks about his race, color, and national origin. More dangerously, the hostile work environment consisted of unwanted touching, physical assaults, and threats of violence against Plaintiff. Plaintiff had to endure all of this while working for Defendant, even after Plaintiff made management aware of the facts and circumstances surrounding the work environment. The actions by Defendants and their employees, or lack thereof, created an abusive working environment that ultimately resulted in Plaintiff filing a complaint.

45. More specifically, Plaintiff belonged to a protected class as a Hispanic/Latino male. The facts are clear that the non-Hispanic/Latino men who worked there got treated better and had their problems and concerns taken seriously as well as received extensive fair and judicial due process before termination.

## RESPONDEAT SUPERIOR AND RATIFICATION

46. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

47. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

   c. All reasonable and necessary costs incurred in pursuit of this suit;

   d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

   e. Inconvenience;

   f. Interest;

   g. Mental anguish in the past;

   h. Mental anguish in the future; and

   i. Loss of benefits.

## SPECIFIC RELIEF

48. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

      a.      Neutral job reference; and

      b.      An injunction against Defendants prohibiting discriminatory employment practices on the basis of sex and other protected categories.

### JURY DEMAND

49.      Plaintiff respectfully demands this Court impanel a lawful jury to hear this case.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

### PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Respectfully submitted,

Crocker Russell & Associates
200 W. Oak Street
Mansfield, Texas 76063
Phone: (817) 482-6570
Fax: (682) 232-1850

*/s/ Ali Crocker Russell*
Ali Crocker Russell
Bar no: 24098868
Email: ali@cralawfirm.com
**ATTORNEY FOR PLAINTIFF**